Jonathan P. Bach (admitted *pro hac vice*)
Daniel J. O'Neill (admitted *pro hac vice*)
Fabien M. Thayamballi (CA State Bar No. 284752)
SHAPIRO ARATO BACH LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
Telephone: (212) 257-4880
Facsimile: (212) 202-6417
jbach@shapiroarato.com
doneill@shapiroarato.com
fthayamballi@shapiroarato.com

Asim Bhansali (CA State Bar No. 194925)
Kate Lazarus (CA State Bar No. 268242)
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Telephone: (415) 630-2350
Facsimile: (415) 367-1539
abhansali@kblfirm.com
klazarus@kblfirm.com

*Attorneys for Defendant*
*CymaBay Therapeutics, Inc.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENFIT, S.A.,<br><br>          *Plaintiff*,<br><br>     v.<br><br>CYMABAY THERAPEUTICS, INC.; AND DOES 1-10;<br><br>          *Defendants*. | Case No. 3:21-cv-00395-MMC<br><br>**NOTICE OF MOTION OF DEFENDANT FOR A PROTECTIVE ORDER REGARDING PLAINTIFF'S SUBPOENAS TO NON-PARTIES**<br><br>Date: November 5, 2021<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Honorable Maxine M. Chesney |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on November 5, 2021, at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Maxine M. Chesney, in Courtroom 7, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant CymaBay Therapeutics, Inc. ("CymaBay") will move under Federal Rules of Civil Procedure 26(c) and 45 and Civil Local Rule 7-1 for a protective order directing Plaintiff GENFIT S.A. ("Genfit") to withdraw document subpoenas issued to two non-parties. The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jonathan P. Bach dated September 30, 2021, and all exhibits attached thereto, all pleadings and papers on file in this case, and such additional authority and argument as may be presented at or before the time this motion is submitted.

CymaBay seeks a Protective Order directing Genfit (1) to withdraw its document subpoenas and (2) to send a copy of that Protective Order to each subpoena recipient, copying CymaBay's counsel, with a notification to the subpoena recipient that Genfit has withdrawn the subpoena by Order of the Court and that, as a result, the subpoena is no longer in force and the recipient need not respond to the subpoena.

Dated:   September 30, 2021                    Respectfully submitted,

                                                /s/ Jonathan P. Bach
Jonathan P. Bach
Daniel J. O'Neill
Fabien M. Thayamballi
SHAPIRO ARATO BACH LLP

Asim Bhansali
Kate Lazarus
KWUN BHANSALI LAZARUS LLP

*Attorneys for Defendant*
*CymaBay Therapeutics, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 2

    A. Genfit's First Amended Complaint Was Recently Dismissed Almost Entirely ........ 2

    B. Genfit's Subpoenas Seek Tens Of Thousands Of Documents .................................. 4

    C. ████████████████████████████████████ .................................................. 5

LEGAL STANDARD .................................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

    I. Non-Party Discovery Is Inappropriate While Genfit's Claims Remain Largely Undefined And The Parties Themselves Have Yet To Exchange Documents ........... 7

    II. Genfit Has Yet To Identify Its Alleged Trade Secrets With Particularity, A Necessary Predicate To Discovery .............................................................................. 8

    III. The Subpoenas Unjustifiably Seek All CymaBay Documents, Including Those Containing CymaBay's Trade Secrets And Other Confidential Business Information ............. 8

    IV. The Subpoenas Are Grossly Disproportionate To Genfit's Case ............................. 9

    V. Party Discovery Should Precede Non-Party Subpoenas ......................................... 10

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Action Learning Sys., Inc. v. Crowe*,
  No. CV-14-5112-GW(SHx), 2014 WL 12564011 (C.D. Cal. Aug. 11, 2014) .................................. 8

*Anderson v. Ghaly*,
  No. 15-cv-05120-HSG, 2020 WL 3184494 (N.D. Cal. June 15, 2020) .......................................... 10

*AngioScore, Inc. v. TriReme Med., Inc.*,
  No. 12-cv-03393-YGR (JSC), 2014 WL 6706873 (N.D. Cal. Nov. 25, 2014) ............................... 9

*Elec. Scripting Prod., Inc. v. HTC Am. Inc.*,
  No. 17-cv-05806-RS (RMI), 2021 WL 3773607 (N.D. Cal. Aug. 25, 2021) .................................. 6

*Feist v. RCN Corp.*,
  No. 12-cv-80119 SI (NC), 2012 WL 12895679 (N.D. Cal. Aug. 13, 2012) ...................................... 9

*Glass Egg Digital Media v. Gameloft, Inc.*,
  No. 17-cv-04165-MMC (RMI), 2019 WL 4166780 (N.D. Cal. Sept. 3, 2019) ........................... 7, 11

*Jones v. Nutiva, Inc.*,
  No. 16-cv-00711-HSG(KAW), 2016 WL 5858467 (N.D. Cal. Oct. 7, 2016) .................................. 6

*Koh v. S.C. Johnson & Son, Inc.*,
  No. C09-00927 RMW, 2011 WL 940227 (N.D. Cal. Feb. 18, 2011) ............................................. 10

*Leader Techs., Inc. v. Facebook, Inc.*,
  No. C10-80028MISC JW (HRL), 2010 WL 761296 (N.D. Cal. Mar. 2, 2010) ............................. 11

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) ........................................................................................................ 10

*Nidec Corp. v. Victor Co. of Japan*,
  249 F.R.D. 575 (N.D. Cal. 2007) .................................................................................................. 11

*Perlan Therapeutics, Inc. v. Sup. Ct.*,
  178 Cal. App. 4th 1333 (2009) ...................................................................................................... 8

*Rawcar Grp., LLC v. Grace Med., Inc.*,
  No. 13cv1105-H (BLM), 2014 WL 12199977 (S.D. Cal. June 26, 2014) ................................ 6, 10

*In re REMEC, Inc. Sec. Litig.*,
  No. 04cv1948 JLS (AJB), 2008 WL 2282647 (S.D. Cal. May 30, 2008) ..................................... 10

*In re Remec, Inc. Sec. Litig.*,
  No. 04cv1948 MMA (AJB), 2009 WL 10673008 (S.D. Cal. Feb. 20, 2009) .................................. 6

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ......................................................................................................................... 7

*Swarmify, Inc. v. Cloudflare, Inc.*,
  No. C 17-06957 WHA, 2018 WL 2445515 (N.D. Cal. May 31, 2018) ............................................. 8

*VirnetX, Inc. v. Apple Inc.*,
  No. 14-mc-80013 RS (NC), 2014 WL 6979427 (N.D. Cal. Mar. 21, 2014) .................................... 10

*Waymo LLC v. Uber Techs., Inc.*,
  No. 17-cv-00939-WHA (JSC), 2017 WL 3581171 (N.D. Cal. Aug. 18, 2017) ................................ 9

**Statutes and Rules**

Fed. R. Civ. P. 26 ................................................................................................................. 1, 6, 9, 10

Fed. R. Civ. P. 45 ............................................................................................................................ 1, 9

Cal. Civ. Proc. Code § 2019.210 ....................................................................................................... 8

Civ. Local R. 7-1 .............................................................................................................................. 1

DEFENDANT'S MOTION FOR PROTECTIVE ORDER REGARDING NON-PARTY SUBPOENAS
Case No. 3:21-cv-00395-MMC

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Federal Rules of Civil Procedure 26(c) and 45 and Civil Local Rule 7-1, Defendant CymaBay Therapeutics, Inc. ("CymaBay") respectfully moves for a protective order directing Plaintiff GENFIT S.A. ("Genfit") to withdraw document subpoenas ("Subpoenas") issued to two non-parties.

**PRELIMINARY STATEMENT**

Genfit improperly seeks extensive document discovery from two non-parties even though the Court recently dismissed Genfit's First Amended Complaint in its entirety, except for one narrow portion of its trade secret misappropriation claims, and even though Genfit has yet to identify (with one limited exception) its alleged trade secrets with particularity, a fundamental requirement in any trade secrets case before discovery begins. Genfit's broad, premature, and impermissible Subpoenas are an improper end-run around the ordinary discovery process, which has yet to commence, as the parties have yet to produce any documents, nor to meet and confer about the appropriate scope of discovery, and the Court has postponed the initial case management conference until after Genfit submits any further amended complaint, presumably so that the scope of discovery can reflect the trade secrets, if any, Genfit alleges in connection with any new or amended claims. Genfit's Subpoenas are also an improper end-run around CymaBay's legitimate objections to the production of documents Genfit now seeks. Indeed, many if not all of the documents Genfit seeks are CymaBay documents, or documents originating from CymaBay, which also happen to be in the hands of the subpoenaed parties, both of whom contracted to provide services to CymaBay. Rather than contending with CymaBay's legitimate objections, Genfit has simply bypassed CymaBay and now seeks the same or similar documents from non-parties who are far less familiar with the claims and issues in this case and not in a position to litigate the same objections.

Indeed, ██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████ (Bach Decl. Ex. D at 3).

1

1  CymaBay agrees. This case should proceed in an orderly manner. Genfit should first undertake to
2  amend its recently dismissed complaint, assuming it intends to do so, so that the parties and the Court
3  can take stock of which claims remain at issue and of any further issues with respect to their legal
4  sufficiency. If Genfit sufficiently pleads any additional trade secret claims, Genfit must then identify
5  any alleged trade secrets with particularity as a necessary predicate before discovery proceeds. Once
6  that occurs, the parties can meet and confer about the appropriate scope of discovery and attempt to
7  resolve which categories of documents each party may seek from the other. Such standard process
8  might well obviate, or at least significantly reduce, the need to burden non-parties.

9      By contrast, Genfit, while still in the formative stages of thinking through its complaint, has
10 launched non-party subpoenas which seek tens of thousands of documents, including many
11 documents laden with CymaBay confidential information and trade secrets that have no relation
12 whatsoever to any claim that has so far survived dismissal in this case. Genfit's approach should be
13 rejected and an appropriate protective order granted.

14                       **FACTUAL AND PROCEDURAL BACKGROUND**

15    **A.  Genfit's First Amended Complaint Was Recently Dismissed Almost Entirely**

16     Genfit commenced this action after one of its contractors, Dr. Gideon Hirschfield, sent an
17 unsolicited email to CymaBay, attaching a synopsis of the clinical trial protocol ("Synopsis") Genfit
18 planned to use in connection with its Phase 3 clinical trial of elafibranor, a potential drug candidate
19 for the treatment of a liver disease known as primary biliary cholangitis ("PBC"). CymaBay was
20 engaged in finalizing its own Phase 3 clinical trial protocol for seladelpar, an altogether different drug
21 candidate, with a different chemical composition, also for the treatment of PBC.
22     Although Hirschfield's disclosure of the Synopsis was apparently unauthorized, clinical trial
23 protocols are generally a matter of public record, as federal regulations require that substantial
24 portions of them, including certain essential information, be published on the government website
25 clinicaltrials.gov. Indeed, it is not uncommon for drug development companies to publish or describe
26 the details of their protocols in scientific journals, including in the field of PBC, and Genfit's protocol
27 draws in numerous respects from previously published protocols in the same field. (*See* ECF No. 68
28 at 4-7). Genfit was aware at all relevant times that Hirschfield was providing consulting services to

both Genfit and CymaBay as well as to other companies in the same field. (*Id.* at 3). After Genfit advised CymaBay of the allegedly unauthorized disclosure, CymaBay immediately retained outside counsel and enlisted the support of a forensic digital and e-discovery vendor to collect any copies of the Synopsis and related materials and quarantine them from further access. CymaBay also advised its outside service providers to take similar measures. CymaBay promptly informed Genfit of these measures. (*See* ECF No. 6-7). Not satisfied, Genfit sued CymaBay for trade secret misappropriation and related torts.

Genfit's First Amended Complaint asserted causes of action for trade secret misappropriation based on the contention that the Synopsis as whole, even if consisting of extensive public information, was a unique compilation of such information, and, as such, a trade secret. Genfit's FAC also asserted causes of action for trade secret misappropriation based on various, unspecified component parts of the Synopsis, on the theory that discrete portions of the Synopsis—as distinct from the entire compilation—were trade secrets as well. CymaBay moved to dismiss the FAC, arguing that any notion that it had misappropriated Genfit's Synopsis as a whole was "dubious" or "academic at best" because CymaBay's drug candidate is distinct and has its own unique characteristics, and thus CymaBay could not possibly rely on Genfit's entire Synopsis—let alone the implausible hypothesis that the FDA would authorize two companies to pursue clinical trials based on identical protocols. (ECF No. 79 at 1). CymaBay moved to dismiss Genfit's remaining trade secret claims, based on unspecified portions of the Synopsis, on other grounds, including Genfit's failure to allege that any limited portions of the Synopsis were secret. CymaBay also moved to dismiss a handful of additional torts on multiple, independent grounds.

By Order dated September 9, 2021, the Court dismissed the FAC almost entirely, rejecting all claims as pled, except for trade secret claims based on the limited proposition that Genfit's Synopsis "in its entirety constitutes a trade secret." (ECF No. 93). The Court ruled that "GENFIT's Second Amended Complaint, if any, shall be filed on or before October 15, 2021." It further stated that, "[i]n light of the foregoing, the Initial Case Management Conference is hereby CONTINUED from

October 15, 2021, to November 19, 2021," and a "Joint Case Management Statement shall be filed no later than November 12, 2021."

### B. Genfit's Subpoenas Seek Tens Of Thousands Of Documents

Genfit issued subpoenas to eight service providers and/or individuals to whom CymaBay outsources various potions of the work associated with its drug development and related clinical trial activity. The day before this motion was filed, Genfit voluntarily agreed to withdraw six of the eight subpoenas. All of the subpoenas, including the two that remain, are substantively identical. (*E.g.*, Bach Decl. Exs. A-B). Each contains the same six document requests. The requests seek documents that go well beyond Genfit's Synopsis in its entirety, and well beyond any documents that discuss or concern Genfit's Synopsis in its entirety. In other words, they far exceed the one delimited trade secret claim that remains actionable after the order of dismissal.[1]

Request No. 2, for example, seeks "all Documents discussing, concerning or relating *in any way*" to the recipient's "relationship with and/or work on behalf of CymaBay" on either CymaBay's current RESPONSE clinical trial or its prior ENHANCE clinical trial, two major clinical trials that concern the safety and efficacy of seladelpar as a means of treating PBC. Array Biostatistics LLC ("Array"), one of the remaining subpoenaed parties, is likely to have tens of thousands of documents responsive to this single request. Array performs statistical services for CymaBay in connection with the RESPONSE trial and performed similar services in connection with the ENHANCE trial. Each and every document that Array has prepared or been provided in connection with these clinical trials, including correspondence, statistical analysis, and advice provided to CymaBay, falls within the broad sweep of Genfit's request. Dr. Hirschfield, the other remaining subpoenaed party, was a longstanding consultant with CymaBay, who likely similarly possesses many responsive documents.

Request No. 1 seeks "all Documents discussing, concerning or relating in any way" to Genfit's Protocol Synopsis, which is defined to include not only "the Protocol [Synopsis] in its entirety" but also "*any and all component parts thereof*"—even though the Court dismissed the FAC

---

[1] CymaBay does not know the full circumstances concerning any manner of service of these Subpoenas or whether they were formally or properly served.

on the ground that Genfit had failed to allege any trade secret consisting of a component part and had succeeded, at most, in identifying only its Protocol Synopsis as a whole as an alleged trade secret. As set forth in its FAC, it was Genfit—not CymaBay—that provided Dr. Hirschfield with a copy of the Genfit Synopsis; Genfit has no need to subpoena the same document from him. To the extent Genfit seeks additional documents from Dr. Hirschfield, its requests plainly exceed the scope of the one alleged trade secret that remains standing after the order of dismissal. Indeed, Genfit even goes so far as to subpoena any documents in Dr. Hirschfield's possession relating to his work on Genfit's ELATIVE clinical trial (Request No. 3), even though that work has nothing to do with CymaBay.

Other requests seek, among other things, "all Documents discussing, concerning, or relating in any way to the Action." (Request No. 6). This broadly worded, catchall request is a blatant fishing expedition and impossible to construe in the current procedural posture, because Genfit has yet to further amend its complaint to clarify the contours of "the Action" and what topics "relat[e] in any way" to it.

In short, Genfit's non-party Subpoenas are not narrowly targeted. They seek confidential research, development, commercial, and other protected information, including information subject to contractual guarantees of confidentiality.[2] They also appear to request documents that contain privileged individually identifiable health information. In addition and just as importantly, they request information that appears to have no reasonable relationship to matters in dispute. They also seek documents likely to be duplicative of documents in the possession of CymaBay.

C. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Before the Court granted dismissal of nearly all Genfit's FAC, the parties had served document requests to each other. CymaBay declined to produce documents noting, among other things, that the Court had yet to rule on its motion to dismiss, that such a ruling could significantly

---

[2] CymaBay's agreements with outside service providers and other individuals are designed to protect the confidentiality of CymaBay materials and include provisions requiring the other party to notify CymaBay in the event of a subpoena (or any similar request), so that CymaBay can move for a protective order as appropriate.

1  affect the scope of discovery, and that, in any event, Genfit had yet to identify its alleged trade secrets
2  with particularity, a necessary predicate to any discovery.  (Bach Decl. Ex. C at 1-2).
3       In response to CymaBay's Requests for Production, ███████████████████████
4  ████████████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████
8  ███████████████████████████████████████████ (Bach Decl. Ex. D
9  at 3).  In addition, Genfit ████████████████████████████[3]

* * * * *

11       To date, despite CymaBay's repeated, good faith efforts to resolve this matter without the
12 Court's intervention, Genfit refuses to voluntarily withdraw its two remaining Subpoenas.  (*See* Bach
13 Decl. ¶ 6).  Accordingly, CymaBay respectfully requests that the Court issue a protective order.

## **LEGAL STANDARD**

15       This Court may issue a protective order "to protect a party or person from annoyance,
16 embarrassment, oppression, or undue burden or expense" caused by a subpoena, including by
17 "requiring that a trade secret or other confidential research, development, or commercial information
18 not be revealed."  Fed. R. Civ. P. 26(c)(1).[4]  Indeed, "this Court is particularly concerned anytime
19 enforcement of a subpoena imposes an economic burden on a non-party."  *Elec. Scripting Prod., Inc.*
20 *v. HTC Am. Inc.*, No. 17-cv-05806-RS (RMI), 2021 WL 3773607, at *2 (N.D. Cal. Aug. 25, 2021).
21 And "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is
22 appropriate and what degree of protection is required."  *Jones v. Nutiva, Inc.,* No. 16-cv-00711-

---

[3] The day before this motion was filed, Genfit advised that it was prepared to amend its response to CymaBay's Requests for Production to identify categories of documents it might be willing to produce at an appropriate stage (more specificity was not provided).  (Bach Decl. ¶ 6).

[4] A party to an action may seek a protective order where, as here, non-party subpoenas impact the party's business relationships and the party's sensitive business information.  *See, e.g., Rawcar Grp., LLC v. Grace Med., Inc.*, No. 13cv1105-H (BLM), 2014 WL 12199977, at *5 (S.D. Cal. June 26, 2014); *In re Remec, Inc. Sec. Litig.*, No. 04cv1948 MMA (AJB), 2009 WL 10673008, at *5 (S.D. Cal. Feb. 20, 2009).

HSG(KAW), 2016 WL 5858467, at *1 (N.D. Cal. Oct. 7, 2016) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

## ARGUMENT

The Court should direct Genfit to withdraw its two remaining non-party Subpoenas because (1) non-party discovery is wholly inappropriate at this stage; (2) Genfit has not identified its alleged trade secrets with particularity; (3) the Subpoenas overbroadly seek everything in the recipient's possession concerning CymaBay, including trade secrets and other sensitive business information; (4) the Subpoenas are grossly disproportionate to Genfit's discovery needs in this case; and (5) the parties should pursue document discovery from each other before burdening non-parties.

### I. Non-Party Discovery Is Inappropriate While Genfit's Claims Remain Largely Undefined And The Parties Themselves Have Yet To Exchange Documents

After substantially dismissing Genfit's FAC without prejudice, the Court granted Genfit additional time to consider the possibility of further amending its complaint, and the Court postponed the initial case management conference accordingly.  The scope of this litigation is therefore currently indeterminate, but might well be determined in the near future.  As a result, the parties have been in a standstill in terms of producing any documents to each other.  Each has taken the position that document discovery is premature pending further developments.  At present, the only claim that has survived dismissal turns on the allegation that CymaBay misappropriated Genfit's Synopsis in its entirety, a fairly limited claim that Genfit might well attempt to supplement by adding separate claims based on individual component parts of the same Synopsis, although it has yet to do successfully.  Non-parties should not be dragged into litigation, or asked to undertake substantial document productions, when the scope of the action remains significantly undetermined and the parties themselves have yet to exchange documents or even agree to their exchange.  Discovery between the parties, once it proceeds, might well obviate or significantly reduce the need for non-party discovery.  Genfit's "approach to the discovery process has put the proverbial cart before the horse, and is inconsistent with the orderly administration of the case." *Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC (RMI), 2019 WL 4166780, at *5 (N.D. Cal. Sept. 3, 2019) (granting motion to quash).

## II. Genfit Has Yet To Identify Its Alleged Trade Secrets With Particularity, A Necessary Predicate To Discovery

The Subpoenas are also improper and premature because Genfit has yet to identify its alleged trade secrets with particularity. It is well settled that such identification must take place before the commencement of any discovery. *See* Cal. Civ. Proc. Code § 2019.210; *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Action Learning Sys., Inc. v. Crowe*, No. CV-14-5112-GW(SHx), 2014 WL 12564011, at *4 (C.D. Cal. Aug. 11, 2014). A defendant is entitled to notice—before discovery—of the full range of alleged trade secrets at issue, so that it can fashion its own discovery requests accordingly, and to prevent the plaintiff from merely molding its claims to whatever it manages to find after discovery begins. *Swarmify*, 2018 WL 2445515, at *2; *Perlan Therapeutics, Inc. v. Sup. Ct.*, 178 Cal. App. 4th 1333, 1343 (2009). Genfit's Subpoenas violate these rules and standards. They seek documents "relating in any way" to Genfit's Synopsis and to "any and all component parts thereof," even though Genfit has yet to state a valid trade secret misappropriation claim based on any component part, nor identify any individual component part as a trade secret with particularity.

## III. The Subpoenas Unjustifiably Seek All CymaBay Documents, Including Those Containing CymaBay's Trade Secrets And Other Confidential Business Information

The Subpoenas impermissibly and unnecessarily intrude upon CymaBay's confidential drug development activity. Request No. 2 purports to compel each subpoenaed party to turn over to Genfit—CymaBay's competitor—*every single document* "[f]rom July 1, 2018 to the present" that "relat[es] in any way" to the recipient's "relationship with and/or work on behalf of CymaBay in connection with the ENHANCE and/or RESPONSE Trials." The request is preposterously overbroad on its face. It would require the Subpoena recipients to identify, review, and produce potentially tens of thousands of documents—everything they have generated or received over three years in connection with their work on CymaBay's clinical trials.[5] And these documents would lay bare for

---

[5] While the Subpoenas are procedurally improper and facially overbroad and should be ordered withdrawn for those reasons alone, CymaBay does not here address any specific burden or other objections (such as failure to serve) that the non-party Subpoena recipients may have. Such objections would have to be addressed in the appropriate forum, in litigation between Genfit and an objecting non-party, including in one forum located outside the United States. The entry of a protective order would help avoid such litigation at a time when a further amended complaint has yet to be filed and when alleged trade secrets have not been sufficiently identified.

Genfit *the entirety* of CymaBay's clinical trial research, including proprietary trade secrets relating to seladelpar's formulation, properties, and scientific evaluations; valuable confidential business information about the product's safety and efficacy; CymaBay's confidential strategic business plans; and detailed federally protected patient health information. In fact, the subpoenaed parties are bound by agreements with CymaBay to maintain such information in strict confidence. Genfit should not be allowed to abuse Rule 45 in this manner. *See Feist v. RCN Corp.*, No. 12-cv-80119 SI (NC), 2012 WL 12895679, at *6 (N.D. Cal. Aug. 13, 2012) (quashing subpoenas for "documents [that] constitute confidential research within the meaning of Rule 45(c)(3)(B)"). Nor is it any answer that the Court previously entered a protective order to govern the disclosure of confidential information in this action. Such an order does not give Genfit carte blanche to acquire sensitive documents that are plainly not relevant, and, in any event, "such orders do not guarantee that the information will not be disclosed." *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 WL 3581171, at *1 (N.D. Cal. Aug. 18, 2017). "Thus, there is no rule that a competitor has to reveal its trade secrets merely because they are produced subject to a protective order." *Id.*

### IV. The Subpoenas Are Grossly Disproportionate To Genfit's Case

In its current posture, this case concerns at most a single issue: whether CymaBay allegedly misappropriated Genfit's Synopsis "in its entirety." Any such wholesale misappropriation is dubious since CymaBay has over the years developed its own clinical trial protocols and, in any event, is developing an altogether different drug from the drug candidate Genfit is testing. Against this backdrop, Genfit's broad Subpoenas are completely disproportionate to any arguable discovery need in this action. Genfit has not narrowed its requests to target documents that use or discuss the Synopsis as a whole.

A party cannot use the Court's subpoena power to command non-parties to produce documents unless they are plainly "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). *See also* Fed. R. Civ. P. 45 Advisory Comm. Note (1970) (scope of subpoena discovery the same as party discovery). "A subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of litigation." *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR

(JSC), 2014 WL 6706873, at *2 (N.D. Cal. Nov. 25, 2014); *In re REMEC, Inc. Sec. Litig.*, No. 04cv1948 JLS (AJB), 2008 WL 2282647, at *3 (S.D. Cal. May 30, 2008) (granting protective order because subpoena requests "far exceed[ed] the scope of the claims and defenses asserted in th[e] case"). The breadth of Genfit's Subpoenas imposes a burden that interferes with important ongoing medical work and amounts to the harassment of one competitor by another. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (subpoenas properly quashed where "served for the purpose of annoying and harassment and not really for the purpose of getting information"); *Rawcar Grp.*, 2014 WL 12199977, at *4-5 (quashing "very broad" subpoenas "not limited to relevant subjects" and noting that each non-party would "need to conduct numerous searches and document reviews to respond," even if they have no responsive documents); *Koh v. S.C. Johnson & Son, Inc.*, No. C09-00927 RMW, 2011 WL 940227, at *4 (N.D. Cal. Feb. 18, 2011) (granting protective order because subpoena was "more harassing" of movant and non-party than "beneficial to any legitimate [issue] in this case").

Because Genfit's sweeping requests far exceed the scope of Genfit's only extant claims in this action, they are grossly disproportionate and should not be permitted.

### V. Party Discovery Should Precede Non-Party Subpoenas

Rule 26 requires this Court to limit non-party subpoenas where, as here, "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Here Genfit has reached out to independent non-parties when it would be far more efficient and far less expensive to seek the same or similar documents from CymaBay. The documents at issue concern work that the subpoenaed parties were performing with or on behalf of CymaBay, and thus CymaBay might well have copies of relevant materials. Once party discovery commences it might well obviate the need for third-party discovery. *See, e.g., Anderson v. Ghaly*, No. 15-cv-05120-HSG, 2020 WL 3184494, at *10 (N.D. Cal. June 15, 2020) (granting motion to quash where "the information sought is clearly available from other sources, and Plaintiffs are in fact actively seeking to obtain the information they seek from those sources"); *VirnetX, Inc. v. Apple Inc.*, No. 14-mc-80013 RS (NC), 2014 WL 6979427, at *4 (N.D. Cal. Mar. 21, 2014) ("[T]here is no reason to

burden [a] non-party . . . when the documents sought should be in the possession of the party defendant."); *Leader Techs., Inc. v. Facebook, Inc.*, No. C10-80028MISC JW (HRL), 2010 WL 761296, at *3 (N.D. Cal. Mar. 2, 2010) (subpoenas "cumulative and duplicative" because defendant "has already produced (or will produce), the requested discovery"); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena because "the vast majority of the discovery sought . . . is discovery obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants"). "[S]erving such broad subpoenas to third parties at such an early juncture in the case . . . subject[s] those parties to unnecessary expense and undue burden." *Glass Egg*, 2019 WL 4166780, at *5.

## CONCLUSION

For the foregoing reasons, the Court should direct Genfit to withdraw the two remaining non-party Subpoenas.

Dated: September 30, 2021
New York, New York

Respectfully submitted,

  /s/ Jonathan P. Bach
Jonathan P. Bach
Daniel J. O'Neill
Fabien M. Thayamballi
SHAPIRO ARATO BACH LLP

Asim Bhansali
Kate Lazarus
KWUN BHANSALI LAZARUS LLP

*Attorneys for Defendant
CymaBay Therapeutics, Inc.*