Adam S. Lurie (admitted *pro hac vice*)
Sean P. Mooney (admitted *pro hac vice*)
**LINKLATERS LLP**
1290 Avenue of the Americas
New York, NY 10104
Tel: (+1) 212 903 9000
Fax: (+1) 212 903 9100
adam.lurie@linklaters.com
sean.mooney@linklaters.com

Ryan W. Koppelman (CA State Bar No. 290704)
Katherine G. Rubschlager (CA State Bar No. 328100)
**ALSTON & BIRD LLP**
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
T: (650) 838-2000
F: (650) 838-2001
ryan.koppelman@alston.com
katherine.rubschlager@alston.com

*Attorneys for Plaintiff GENFIT S.A.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

---

| | |
|---|---|
| GENFIT S.A.,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CYMABAY THERAPEUTICS, INC.; AND DOES 1-10,<br><br>　　　　　　　　　　Defendants. | Case No. 3:21-cv-00395-MMC<br><br>**PLAINTIFF'S MOTION PURSUANT TO CIVIL LOCAL RULE 7-1 FOR A PROTECTIVE ORDER TO PREVENT INTERFERENCE WITH PRE-DISCOVERY INFORMAL WITNESS COMMUNICATIONS**<br><br>Date: November 12, 2021<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Honorable Maxine M. Chesney |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that at 9:00 a.m. on November 12, 2021, or as soon thereafter as counsel may be heard, Plaintiff GENFIT S.A. ("GENFIT" or "Plaintiff") will move this Court, before the Honorable Maxine M. Chesney, in Courtroom 7, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to Civil Local Rule 7-1, and the Court's inherent power to control the course of litigation, for a protective order preventing CymaBay Therapeutics, Inc. ("CymaBay" or "Defendant") from interfering with GENFIT's ability to conduct pre-discovery informal communications with Dr. Gideon Hirschfield ("Dr. Hirschfield") as a material fact witness.

Plaintiff's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all records and papers on file in this action, any oral argument, and any other evidence that the Court may consider.

The present Motion does not constitute a discovery dispute, and given this Motion is so closely related to GENFIT's Motion Pursuant to Civil Local Rule 6-3 for an Extension of Time to File a Second Amended Complaint ("Motion for Extension"), GENFIT has filed its Motion with the Court. However, if the Court considers the present Motion to constitute a discovery dispute, GENFIT will comply with the Court's Order dated September 30, 2021 and file its request in accordance with Magistrate Judge Tse's procedures. *See* ECF No. 96 (ordering that all discovery matters shall be filed pursuant to the assigned Magistrate Judge's procedures).

Dated: October 8, 2021

Respectfully submitted,

ADAM S. LURIE
SEAN P. MOONEY
**LINKLATERS LLP**

AND

RYAN W. KOPPELMAN
KATHERINE G. RUBSCHLAGER
**ALSTON & BIRD LLP**

/s/ *Adam S. Lurie*
Adam S. Lurie
*Attorneys for Plaintiff GENFIT S.A.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

GENFIT respectfully submits this Memorandum of Points and Authorities in support of its motion for a protective order preventing CymaBay from interfering with GENFIT's pre-discovery informal communications with a key witness, Dr. Hirschfield.  As courts do not view the issue of a party using a confidentiality agreement to block witness interviews, the issue discussed herein, as a "discovery" matter, GENFIT has filed the present Motion with this Court, rather than according to the Court's September 30, 2021 Order referring all "discovery matters" to Magistrate Judge Tse.  ECF No. 96; *see In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1133 (N.D. Cal. 2002) ("In essence, what the plaintiffs are asking for is an order from the Court allowing former JDSU employees to speak voluntarily to plaintiffs' lead counsel about certain topics without fear of breaching JDSU's confidentiality agreements.  This is not discovery, because plaintiffs are not using court process to require these third parties to provide information about the lawsuit.  Instead, plaintiffs are merely seeking an order that would allow former employees to speak voluntarily if they wish to do so.").  In addition, the instant motion is closely intertwined with GENFIT's Motion for Extension (ECF No. 99) now also pending before this Court.[1]

**PRELIMINARY STATEMENT**

Courts in this Circuit and throughout the country have long recognized that a critical part of a party's ability to investigate its claims is the right to communicate freely with fact witnesses. Indeed, nearly 20 years ago a court in this District held that a party cannot attempt to "muzzle" a witness under the cloak of a confidentiality agreement.  *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d at 1136.

To further investigate the facts of this case, GENFIT has been attempting to speak with Dr. Hirschfield – through his counsel – as an informal witness.[2]  However, it has become clear that

---

[1]    Of course, GENFIT will defer to the Court's preference regarding whether Magistrate Judge Tse should hear this Motion.

[2]    GENFIT has been attempting to do so separate and apart from the subpoena that GENFIT sent to Dr. Hirschfield on September 1, 2021.  That subpoena is the subject of CymaBay's motion for a protective order (ECF No. 95), and is thus independent of the relief GENFIT seeks here.

CymaBay is attempting to use the existence of a confidentiality provision in a contract between CymaBay and Dr. Hirschfield to preclude him from doing so – threatening both Dr. Hirschfield and GENFIT with potential legal action if they attempt to communicate with each other voluntarily, even with respect to *GENFIT's own* trade secrets. CymaBay cannot use the purported terms of any such confidentiality agreement (a copy of which has never been provided to GENFIT) to conceal its own misconduct. Indeed, courts have consistently recognized that a confidentiality agreement standing alone does not prevent witnesses from disclosing information that will assist in the investigation of wrongdoing, as noted above and discussed further below.

GENFIT has sought to understand CymaBay's position and resolve this dispute without motion practice. To do so, GENFIT sought to assure CymaBay that GENFIT would narrowly limit any informal discussions with Dr. Hirschfield or his counsel to: (a) information related only to GENFIT's own Protocol; (b) Dr. Hirschfield's provision of GENFIT's Protocol to CymaBay; and (c) Dr. Hirschfield's communications with CymaBay regarding GENFIT's Protocol. Except insofar as GENFIT's own Protocol is involved, during such discussions, GENFIT would not seek information regarding CymaBay's confidential material. Further, at all times, GENFIT would ensure its compliance with the Court's Protective Order governing this matter. *See* ECF No. 62. Despite these assurances, CymaBay has refused to agree that GENFIT can speak with Dr. Hirschfield, and Dr. Hirschfield – who has otherwise indicated to GENFIT a willingness to potentially cooperate with GENFIT – has understandably declined to speak with GENFIT in the face of potential claims from CymaBay. Accordingly, GENFIT respectfully requests an order from this Court instructing CymaBay that it may not improperly interfere in GENFIT's ability to communicate with Dr. Hirschfield as a fact witness related to the limited categories of topics above.

### ADDITIONAL RELEVANT BACKGROUND

On or about September 13, 2021, after GENFIT had been seeking to communicate with Dr. Hirschfield regarding this matter, CymaBay informed GENFIT that Dr. Hirschfield retained counsel. Declaration of Adam S. Lurie ("Lurie Decl.") ¶¶ 3–4. Between September 17 and October 1, 2021, GENFIT's counsel met and conferred with Dr. Hirschfield's counsel four times.

1  *Id.* ¶ 5. During these meetings, Dr. Hirschfield's counsel informed GENFIT, in substance and in
2  part, that: (a) Dr. Hirschfield did not want to become a party to this suit, and would likely be willing
3  to cooperate voluntarily with GENFIT's investigation into CymaBay's receipt and dissemination
4  of GENFIT's trade secrets; (b) Dr. Hirschfield was party to a confidentiality agreement with
5  CymaBay similar to Dr. Hirschfield's confidentiality agreement with GENFIT; (c) CymaBay's
6  counsel had warned Dr. Hirschfield's counsel that if Dr. Hirschfield engaged in voluntary
7  discussions with GENFIT related to the allegations in the instant suit, Dr. Hirschfield risked
8  breaching his confidentiality obligations to CymaBay, and could therefore become a party to this
9  or other suit involving CymaBay; and (d) under the circumstances, Dr. Hirschfield was "between
10 a rock and a hard place," and both Dr. Hirschfield and his counsel would not engage in voluntary
11 discussions with GENFIT until the scope of his confidentiality obligations was resolved. *Id.* ¶ 7.

12 In light of this situation, on October 6, 2021, we met and conferred with counsel for
13 CymaBay. *Id.* ¶ 8. During this meet and confer, GENFIT explained to CymaBay's counsel, in
14 substance and in part, that it sought CymaBay's agreement to engage Dr. Hirschfield and his
15 counsel in discussions related to the narrow subjects outlined above. *Id.* To reach agreement with
16 CymaBay, we also expressed a willingness to further discuss these subjects. *Id.* CymaBay
17 declined to agree that GENFIT could speak with Dr. Hirschfield, stating in substance and in part,
18 that it would not issue us an "advisory opinion" regarding appropriate topics to discuss with Dr.
19 Hirschfield, and explained that GENFIT risked potential liability if it caused Dr. Hirschfield to
20 breach his confidentiality agreement with CymaBay – for instance, for tortious interference with
21 contract. *Id.* ¶ 9.

22 The parties were not able to resolve their dispute during the October 6 meet and confer,
23 and thus GENFIT has filed this Motion. *Id.* ¶ 11.

24 **ARGUMENT**

25 It has long been recognized in this Circuit that litigants maintain a "valuable right" to
26 interview witnesses. *Wharton v. Calderon*, 127 F.3d 1201, 1204 (9th Cir. 1997); *see also*
27 *Cacoperdo v. Demosthenes*, 37 F.3d 504, 509 (9th Cir. 1994); *Callahan v. United States*, 371 F.2d
28 658, 660 (9th Cir. 1967). As the Ninth Circuit described in *Wharton*, "[w]itness interviews are

one of the primary investigative techniques," and are an invaluable way for a party to develop their case. *Wharton*, 127 F.3d at 1204; *see also Callahan*, 371 F.2d at 660 ("Both sides have the right to interview witnesses before trial.").

Indeed, courts in this and neighboring Districts have consistently reinforced that the right to interview witnesses with relevant information is particularly important in the early stages of investigating and developing a party's case, including pre-discovery and in the early stages of discovery. *See In re BofI Holding, Inc. Sec. Litig.*, 318 F.R.D. 129, 135 (S.D. Cal. 2016) ("The Court recognizes the legitimate needs of defendants to conduct investigations in order to prepare their defense."); *Brado v. Vocera Commc'ns, Inc.*, 14 F. Supp. 3d 1316, 1319 (N.D. Cal. 2014) ("[P]laintiffs . . . commonly talk to witnesses in advance of filing the complaint[.] . . . To hold to the contrary would severely compromise plaintiffs' ability" to meet their pleading standards) (internal citations omitted).

These holdings are consistent with cases from across the country that have long recognized that informal communications between a party and a material witness—such as the communications GENFIT wishes here to conduct with Dr. Hirschfield—are vital to a party's ability to investigate and prosecute their claims. *See, e.g.*, *Mgmt. Insights, Inc. v. Tricon Glob. Restaurants, Inc.*, No. 01-1040-MLB, 2001 WL 1325955, at *2 (D. Kan. Oct. 24, 2001) (permitting *ex parte* interviews of former employees); *Lovato v. Burlington N. & Santa Fe Ry. Co.*, 200 F.R.D. 448, 451 (D. Colo.), *rev'd on other grounds* 201 F.R.D. 509 (D. Colo. 2001) ("The informal communications contemplated by defendant's motion to compel are consistent with th[e] overarching objective" of the Federal Rules of Civil Procedure to "promote[] the efficient exchange of relevant information, as well as the just, speedy and inexpensive determination of every action"); *see also Niesig v. Team I*, 76 N.Y.2d 363, 372, 558 N.E.2d 1030 (N.Y. Ct. App. 1990).

In a seminal case on this issue, *IBM v. Edelstein*, the Second Circuit explained the value of permitting parties to informally interview those with relevant information. 526 F.2d 37 (2d Cir. 1975). In reversing an order by the trial judge prohibiting counsel from interviewing a witness without opposing counsel unless a stenographer was present, the Second Circuit recognized the

"time-honored and decision-honored principle[] . . . that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." *Id.* at 42. "Proper preparation of a client's case demands" no less, the court explained. *Id.* at 42–43.

It is precisely this time-honored and well-recognized principle with which CymaBay is interfering, as discussed above.

Neither CymaBay nor Dr. Hirschfield have provided GENFIT with a copy of the alleged contract that contains the confidentiality provision in question. Lurie Decl. ¶ 10. However, the mere fact that such a contract exists does not support CymaBay's conduct. Indeed, the situation here is just like *In re JDS Uniphase Corporation Securities Litigation*. 238 F.Supp.2d 1127. In that case, the lead plaintiff in a securities action against JDS Uniphase Corporation ("JDSU") sought to limit the scope of confidentiality agreements between JDSU and its former employees to permit the lead plaintiff to informally interview those employees. As here, the lead plaintiff stipulated it had no interest in any information that could be construed as JDSU's trade secrets, and, as such, the confidentiality agreements should not limit the plaintiff's ability to informally interview former employees. *Id.* at 1134. The court ultimately held that JDSU "cannot use its confidentiality agreements to chill former employees from voluntarily participating in legitimate investigations into alleged wrongdoing." *Id.* at 1137.

Likewise, as in this case, GENFIT has provided CymaBay a narrow set of defined subjects about which GENFIT intends to speak with Dr. Hirschfield, and if the Court would like us to be even more specific with proposed questions (perhaps *in camera* to protect GENFIT's work product), GENFIT is prepared to do so.

Other courts, and even defense counsel in other litigations, accord. *See, e.g.*, *Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2017 WL 588390, at *10–*13 (S.D. Cal. Feb. 14, 2017) (endorsing a public policy exception to confidentiality agreements in the case of exposing wrongdoing); *Siebert v. Gene Sec. Network, Inc*, No. 11-CV-01987-JST, 2013 WL 5645309, at *6–*8 (N.D. Cal. Oct. 16, 2013) (holding confidentiality agreements that frustrate public policy of obtaining information that forms the basis of an action against wrongdoing are unenforceable);

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING WITNESS COMMUNICATIONS
Case No. 3:21-cv-00395-MMC
7

*U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1038–39 (C.D. Cal. 2012) (refusing to strike exhibits allegedly taken in violation of an NDA given strong public policy for exposing wrongdoing); *Brado*, 14 F. Supp. 3d at 1319 (court permitting plaintiff to use information from witness subject to confidentiality agreement after defense counsel stated during hearing "that, to her knowledge, no one has successfully argued that information so obtained was barred on the basis of a confidentiality agreement"); *Hoffman v. Sbarro, Inc.*, No. 97 CIV. 4484 (SS), 1997 WL 736703, at *1 (S.D.N.Y. Nov. 26, 1997) ("To the extent that the [non-disclosure] agreement might be construed as requiring an employee to withhold evidence relevant to litigation designed to enforce federal statutory rights, it is void."); *Chambers v. Cap. Cities/ABC*, 159 F.R.D. 441, 445 (S.D.N.Y. 1995) ("[A]greements calling or appearing to call for silence concerning matters relevant to alleged legal violations, whether or not such agreements are sought to be enforced, inherently chill communication relevant to the litigation."); *McGrane v. Reader's Dig. Ass'n, Inc.*, 822 F. Supp. 1044, 1052 (S.D.N.Y. 1993) ("Disclosures of wrongdoing do not constitute revelations of trade secrets which can be prohibited by agreements binding on former employees.").

Accordingly, and consistent with the principles above, GENFIT respectfully requests an order that CymaBay may not improperly interfere with GENFIT's pre-discovery informal communications with Dr. Hirschfeld, particularly since GENFIT is merely seeking to investigate its claims, protect its own trade secrets, and better understand the scope of CymaBay's wrongdoing.

## CONCLUSION

For the reasons set forth above, GENFIT respectfully requests a protective order preventing CymaBay from interfering with GENFIT's pre-discovery informal communications with Dr. Hirschfeld.

Dated: October 8, 2021                          Respectfully submitted,

                                          ADAM S. LURIE
                                        SEAN P. MOONEY
                                        **LINKLATERS LLP**

AND

RYAN W. KOPPELMAN
KATHERINE G. RUBSCHLAGER
**ALSTON & BIRD LLP**

/s/ *Adam S. Lurie*

Adam S. Lurie
*Attorneys for Plaintiff GENFIT S.A.*