IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GENFIT S. A.,

             Plaintiff,

     v.

CYMABAY THERAPEUTICS INC.,

             Defendant.

Case No.  21-cv-00395-MMC

**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Before the Court is defendant CymaBay Therapeutics Inc.'s ("CymaBay") motion, filed November 8, 2021, to dismiss plaintiff GENFIT S.A.'s ("GENFIT") Second Amended Complaint ("SAC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. GENFIT has filed opposition, to which CymaBay has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND[2]

GENFIT is a "late-stage clinical biopharmaceutical company" engaged in developing treatments for patients suffering from primary biliary cholangitis ("PBC"), a "liver-related" disease for which there is currently no cure.  (See SAC ¶¶ 19, 22-23.) Clinical trials, which "involve the administration of [a] drug candidate to human subjects under the supervision of qualified investigators," are "a necessary prerequisite before any

---

[1] By order filed January 18, 2022, the Court took the matter under submission.

[2] The following facts are taken from the allegations of the operative complaint, the SAC.

United States District Court
Northern District of California

new drug therapy will be approved by regulatory authorities," such as the U.S. Food and Drug Administration ("FDA") (see SAC ¶ 45), and are "conducted under the guidance of protocols, which detail, among other things, the objective of the trial, the parameters to be used in monitoring safety, and the effectiveness criteria to be evaluated" (see SAC ¶ 49).

In early 2019, GENFIT began designing a protocol (the "Protocol") for Phase 3 of its clinical trial, known as ELATIVE.  (See SAC ¶ 53.)  On March 1, 2019, GENFIT "entered into a one-year collaboration agreement" ("Collaboration Agreement") with Dr. Gideon Hirschfield (see SAC ¶ 66),[3] a "world-renowned leader in liver medicine" and "highly sought-after investigator for clinical trials in PBC" (see SAC ¶ 68) who "agreed and was intended to serve as the lead investigator" and an "advisor to GENFIT in connection with the ELATIVE trial" (see SAC ¶ 67).  The Collaboration Agreement, as well as a Confidential Disclosure Agreement ("CDA") between Dr. Hirschfield and GENFIT, contained confidentiality provisions that "prohibited" Dr. Hirschfield from "disclos[ing] any of GENFIT's [c]onfidential [i]nformation to any third party without prior written approval from GENFIT."  (See SAC ¶ 69; see also SAC ¶¶ 71-72.)

According to GENFIT, Dr. Hirschfield, on July 17, 2020, "surreptitiously sent" an email ("July 17 Email") containing GENFIT's "trade secret Protocol and . . . Confidential Strategic Information" ("CSI") to CymaBay (see SAC ¶ 81), GENFIT's "most direct and key competitor" (see SAC ¶ 82) and with whom Dr. Hirschfield "works closely" as a "lead principal investigator" and "close advisor" (see SAC ¶ 85 (internal quotation and alteration omitted)).  GENFIT alleges that, "between at least July 17, 2020 and the end of August 2020," CymaBay "disclosed" the Protocol and CSI to "certain CymaBay employees . . . [,] generated internal documents that included references to the Protocol . . . [,]" and "then disclosed those documents . . . to at least eight of its service provides, all of whom were assisting CymaBay . . . with the design of its [own] protocol."  (See SAC ¶ 113.)

---

[3] On March 1, 2020, the Collaboration Agreement was extended for "an additional one-year term."  (See SAC ¶ 66.)

2

1    Based on the above allegations, GENFIT asserts the following six Causes of

2  Action: (1) "Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836, <u>et seq.</u>)";

3  (2) "Violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426, <u>et</u>

4  <u>seq.</u>)"; (3) "Intentional Interference with Prospective Economic Advantage"; (4) "Negligent

5  Interference with Prospective Economic Advantage"; (5) "Aiding and Abetting Breach of

6  Fiduciary Duty," and (6) "Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code

7  §§ 17200-17209)."

8    By the instant motion, CymaBay seeks an order dismissing each of GENFIT's

9  Causes of Action, with the exception of the First and Second Causes of Action to the

10  extent those claims are "based on [the Protocol] in its entirety."  (<u>See</u> Mot. at 23:22-24.)

11                                **LEGAL STANDARD**

12    Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

13  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

14  under a cognizable legal theory."  <u>See</u> <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696,

15  699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of

16  the claim showing that the pleader is entitled to relief.'"  <u>See</u> <u>Bell Atlantic Corp. v.</u>

17  <u>Twombly</u>, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a

18  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

19  allegations."  <u>See</u> <u>id.</u>  Nonetheless, "a plaintiff's obligation to provide the grounds of his

20  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

21  of the elements of a cause of action will not do."  <u>See</u> <u>id.</u> (internal quotation, citation, and

22  alteration omitted).

23    In analyzing a motion to dismiss, a district court must accept as true all material

24  allegations in the complaint and construe them in the light most favorable to the

25  nonmoving party.  <u>See</u> <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  "To

26  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

27  as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S.

28  662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  "Factual allegations must be

United States District Court
Northern District of California

1   enough to raise a right to relief above the speculative level[.]" <u>Twombly</u>, 550 U.S. at 555.

2   Courts "are not bound to accept as true a legal conclusion couched as a factual

3   allegation." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (internal quotation and citation omitted).

4       Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider

5   any material beyond the complaint. <u>See</u> <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.,</u>

6   <u>Inc.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged

7   in the complaint, and whose authenticity no party questions, but which are not physically

8   attached to the pleading, however, may be considered. <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d

9   449, 454 (9th Cir. 1994). In addition, a district court may consider any document "the

10  authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

11  relies," regardless of whether the document is referenced in the complaint. <u>See</u> <u>Parrino</u>

12  <u>v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998). The Court may also consider matters

13  that are subject to judicial notice. <u>See</u> <u>Mack v. South Bay Beer Distribs., Inc.</u>, 798 F.2d

14  1279, 1282 (9th Cir. 1986).

15                                  **DISCUSSION**

16  **A.    First and Second Causes of Action (Violations of Defend Against Trade**
        **Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA"))**
17
        As noted, in the First and Second Causes of Action, GENFIT alleges CymaBay
18
    misappropriated GENFIT's trade secrets in violation of the DTSA and CUTSA.
19
        The elements of a misappropriation of trade secrets claim under the DTSA and
20
    CUTSA are "substantially similar." <u>See</u> <u>InteliClear, LLC v. ETC Glob. Holdings, Inc.</u>, 978
21
    F.3d 653, 657 (9th Cir. 2020) (noting "[c]ourts have analyzed these claims together
22
    because the elements are substantially similar"); <u>see also</u> 18 U.S.C. §§ 1836, 1839; Cal.
23
    Civ. Code § 3426.1, 3426.3. To state a claim under either statute, a plaintiff must prove
24
    "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the
25
    trade secret, and (3) that the misappropriation caused or threatened damage to the
26
    plaintiff." <u>See</u> <u>InteliClear</u>, 978 F.3d at 657-58. To be a "trade secret," (1) "the owner" of
27
    information must have "taken reasonable measures to keep such information secret," and
28

United States District Court
Northern District of California

                                      4

(2) "the information [must] derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  See 18 U.S.C. § 1839(3); see also Cal. Civ. Code § 3426.1(d).

By order filed September 9, 2021 ("September 9 Order"), the Court dismissed GENFIT's First and Second Causes of Action to the extent those claims were "based on alleged trade secrets other than the Protocol in its entirety" (see Sept. 9 Order at 5:7-16), finding, inter alia, GENFIT "failed to adequately plead the element of secrecy" with respect to any component part of the Protocol, and, contrary to GENFIT's allegations, GENFIT's "use, endorsement and adoption of every component part of the Protocol, and the way in which GENFIT used such information," did not "constitute trade secrets separate from the underlying information itself" (see id. at 2:1-3:5 (internal quotation and citation omitted)).

In the SAC, GENFIT now identifies fourteen component parts of the Protocol that it alleges are trade secrets ("Component Parts") on the basis that, according to GENFIT, "the use of each such [Component Part] in a clinical trial for a drug candidate intended to treat PBC in the manner described [in the SAC] is unique to the ELATIVE trial and had not been published or otherwise made publicly available" at the time of the alleged misappropriation, and the "disclosure or use" of each such component part "would give CymaBay critical insight" in "designing its own protocol . . . and would otherwise facilitate, enhance, and speed CymaBay's development of" its clinical trial or "other business efforts."  (See SAC ¶¶ 58-60.)

The Court agrees with CymaBay, however, that GENFIT, while changing the wording, has not changed the essence of its earlier theory.  Moreover, to the extent the element of secrecy arguably has been adequately pleaded as to any of the Component Parts, GENFIT, as CymaBay points out, has again "fail[ed] to adequately allege how any individual component part . . . , standing on its own, has any independent economic value . . . different from the value that [GENFIT] attaches to its [Protocol] as a whole."

(See Mot. at 7:5-6, 18-25.)[4]  In particular, although the Component Parts "serve as constituent parts falling under the umbrella of" the Protocol in its entirety, "that relationship does not compel a reasonable inference that" each such component "is itself economically valuable."  See Cisco Sys., Inc. v. Chung, 462 F. Supp. 3d 1024, 1053 (N.D. Cal. 2020).[5]

Accordingly, to the extent GENFIT's First and Second Causes of Action are based on the Component Parts, the claims will be dismissed without further leave to amend.

**B.    Third and Fourth Causes of Action (Intentional and Negligent Interference with Prospective Economic Advantage)**

In the Third and Fourth Causes of Action, respectively, GENFIT alleges CymaBay intentionally and negligently interfered with GENFIT's prospective economic advantage.

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  See Korea Supply Co. v.

---

[4] GENFIT contends CymaBay's position that the Component Parts are not trade secrets "directly contradicts" a "prior representation" made by CymaBay in support of its motion to dismiss the First Amended Complaint ("FAC") (see Opp. at 1:17-19), specifically, that, "[i]f the FAC is deemed to incorporate" a letter, dated June 25, 2021, sent from GENFIT's counsel to CymaBay ("GENFIT Letter"), CymaBay "w[ould] not seek, at this stage, to dismiss" GENFIT's First and Second Causes of Action "to the extent they are based on the . . . components of the [Protocol]" identified therein (see Def.'s Reply in Further Supp. of Mot. to Dismiss FAC at 2:3-6; see also Decl. of Daniel J. O'Neill in Further Supp. of Def.'s Mot. to Dismiss the FAC Ex. A at 2 (GENFIT Letter)).  To the extent the First and Second Causes of Action are now based on those component parts, however, GENFIT has not simply re-identified them in the SAC, but, rather, has included an "additional explanation as to why each" such component allegedly "constitutes a trade secret."  (See SAC ¶¶ 59-60.)  Consequently, CymaBay is not barred from seeking dismissal with respect to those components as currently alleged in the SAC.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (noting plaintiff can "plead [it]self out of a claim by including unnecessary details contrary to [its] claims").

[5] In light of these findings, the Court does not address herein CymaBay's alternative argument that GENFIT has failed to allege facts sufficient to show "misappropriation or damage with respect to" the Component Parts.  (See Mot. at 8:3-4.)

1    Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003) (internal quotation and citation

2    omitted).

3         To state a claim for negligent interference with prospective economic advantage, a

4    plaintiff must allege that "(1) an economic relationship existed between the plaintiff and a

5    third party which contained a reasonable probable future economic benefit or advantage

6    to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or

7    should have been aware that if it did not act with due care its actions would interfere with

8    this relationship and cause plaintiff to lose in whole or in part the probable future

9    economic benefit or advantage of the relationship; (3) the defendant was negligent; and

10   (4) such negligence caused damage to the plaintiff in that the relationship was actually

11   interfered with or disrupted and the plaintiff lost in whole or in part the economic benefits

12   or advantage reasonably expected from the relationship."  See N. Am. Chem. Co. v.

13   Superior Court, 59 Cal. App. 4th 764, 786 (1997).

14        By its September 9 Order, the Court dismissed GENFIT's Third and Fourth

15   Causes of Action, for the reasons that GENFIT failed to allege facts sufficient to support a

16   finding that, "but for" CymaBay's alleged interference, it is "reasonably probable that

17   [GENFIT's] lost economic advantage would have been realized" (see Sept. 9 Order at

18   3:9-20 (internal quotation and citation omitted)), or that, "notwithstanding Dr. Hirschfield's

19   alleged breach of his obligation to keep the Protocol confidential, GENFIT would have

20   continued working with him" (see id. at 3:21-4:3).

21        In the SAC, GENFIT now alleges CymaBay's actions interfered with GENFIT's

22   "economic relationship with Dr. Hirschfield, as well as the Toronto Center for Liver

23   Disease and the University of Toronto with which he is affiliated" (see SAC ¶ 154),

24   because, even after Dr. Hirschfield sent the July 17 Email to CymaBay, GENFIT "would

25   have continued to work with [him]" if CymaBay "had deleted the Protocol and [CSI], not

26   disclosed it to third parties, and not further discussed . . . that information with Dr.

27   Hirschfield" (see SAC ¶ 168).

28        CymaBay argues this allegation should be disregarded as contradicting GENFIT's

United States District Court
Northern District of California

United States District Court
Northern District of California

1    prior allegation that, "by acquiring from Dr. Hirschfield the Protocol as well as the

2    confidential and proprietary information . . . related to" the ELATIVE trial, "CymaBay knew

3    that GENFIT and Dr. Hirschfield would have no choice but to terminate their relationship

4    following this serious breach of trust." (See FAC ¶ 155); see also Airs Aromatics, LLC v.

5    Victoria's Secret Brand Mgmt. Inc., 744 F.3d 595, 600 (9th Cir. 2014) (noting "[a] party

6    cannot amend pleadings to directly contradict an earlier assertion made in the same

7    proceeding" (internal quotation, citation, and alteration omitted)).  The Court agrees.

8    Although GENFIT argues the two pleadings can be reconciled, the Court is not

9    persuaded, and, consequently, does not consider the new allegation.  See, e.g., Pacific

10   Recovery Sols. v. United Behavioral Health, 508 F. Supp. 3d 606, 615 (N.D. Cal. 2020)

11   (declining to consider "new allegations that contradict[ed] the allegations in [a prior]

12   complaint").  As set forth below, however, even if the challenged allegation were

13   accepted, the two interference claims, nonetheless, fail.

14        First, as CymaBay contends, GENFIT's alleged future economic benefit is, again,

15   too "speculative" to support a claim based thereon.  (See Mot. at 14:10-12.)

16        In particular, GENFIT alleges the above-referenced relationships "contained the

17   probability of future economic benefit to GENFIT" because (1) Dr. Hirschfield is "a world-

18   renowned, highly sought-after, and experienced clinician-scientist with extensive

19   experience designing, leading, and conducting all stages of clinical trials, including in

20   particular for drugs intended to treat PBC," and (2) "the ability to use the University of

21   Toronto as one of the sites where the clinical trial would be conducted" and "to

22   collaborate with other experts at the Toronto Centre for Liver Disease . . . would [have]

23   give[n]" GENFIT "access to a diverse and robust patient population" (see SAC ¶ 159).

24        As noted in the Court's September 9 Order, for a plaintiff to meet the "threshold

25   requirement" of a claim alleging interference with prospective economic advantage, it

26   must be "reasonably probable" that "the prospective economic advantage would have

27   been realized but for [the] defendant's interference."  See Youst v. Longo, 43 Cal. 3d 64,

28   71 (1987) (internal quotation and citation omitted).  Although GENFIT alleges its

relationships with Dr. Hirschfield and his affiliates would have "significantly increased the chance of a timely and efficacious clinical trial and, ultimately, FDA approval" (see SAC ¶ 159), GENFIT also alleges that, in the context of a clinical trial such as ELATIVE, "failure can occur at any stage" (see SAC ¶ 48 (noting "[s]uccess in early clinical trials does not ensure that subsequent clinical trials will generate the same or similar results, and data obtained from trials are susceptible to varying interpretations, which may delay, limit, or prevent regulatory approval")). Consequently, one cannot conclude, "without engaging in impermissible and fanciful speculation," that GENFIT's relationship with Dr. Hirschfield and his affiliates was "reasonably expected to be economically advantageous." See Worldwide Com., Inc. v. Fruehauf Corp., 84 Cal. App. 3d 803, 810-11 (1978) (finding no "prospective economically advantageous expectancy" where plaintiff "d[id] not allege or demonstrate how" its "bona fide business relationship . . . could reasonably expect to realize a profit").

GENFIT's additional allegation that, due to CymaBay's interference, GENFIT lost its "investment[] in Dr. Hirschfield" and was "required . . . to pivot and locate a new lead investigator" and "potential sites" for its clinical trial likewise is unavailing. (See SAC ¶ 171.) "Having to seek other" investigators and sites is "not the kind of economic interest which this tort was designed to protect." See Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 619-20 (1989) (emphasis in original) (finding no disruption of "protected" economic expectancy where defendant's refusal to provide medical services to plaintiff's patients "forc[ed]" plaintiff "to seek out other physicians").

In any event, even assuming, arguendo, GENFIT's allegations suffice to plead a prospective economic advantage, GENFIT, as CymaBay points out, "alone decided to terminate its relationship with [Dr.] Hirschfield and his affiliates" (see Mot. at 17:21-22), and GENFIT has cited no authority, nor is the Court aware of any, suggesting GENFIT's termination of its own economic relationship can support a claim for intentional interference; indeed, relevant authority suggests the contrary, see Worldwide, 84 Cal. App. 3d at 808 (noting, where plaintiff and third party are "already in a business

9

1  relationship," the "type[] of expectanc[y]" protected by the tort is "limited to" situations

2  where "the tortfeasor induces or otherwise purposely causes the <u>third party</u> to terminate

3  the relationship" (emphasis added)).[6]

4     Accordingly, GENFIT's Third and Fourth Causes of Action will be dismissed

5  without further leave to amend.

6  **C.    Fifth Cause of Action (Aiding and Abetting Breach of Fiduciary Duty)**

7     In the Fifth Cause of Action, GENFIT alleges CymaBay aided and abetted Dr.

8  Hirschfield in breaching a fiduciary duty owed to GENFIT.

9     A defendant can be held liable for aiding and abetting another person's breach of

10  fiduciary duty if the defendant "(a) knows the other's conduct constitutes a breach of duty

11  and gives substantial assistance or encouragement to the other to so act or (b) gives

12  substantial assistance to the other in accomplishing a tortious result and the person's

13  own conduct, separately considered, constitutes a breach of duty to the third person."

14  See <u>Casey v. U.S. Bank Nat'l Ass'n</u>, 127 Cal. App. 4th 1138, 1144 (2005) (internal

15  quotation and citation omitted).

16     By its September 9 Order, the Court found GENFIT failed "to plead facts sufficient

17  to support a finding that CymaBay gave 'substantial assistance or encouragement to' Dr.

18  Hirschfield to breach [a] fiduciary duty to GENFIT," for the reasons that (1) "all of

19  [GENFIT's] allegedly wrongful acts occurred after Dr. Hirschfield's alleged breach, i.e.,

20  the disclosure of the Protocol," (2) "to the extent GENFIT [alleged] some additional

21  breach on the part of Dr. Hirschfield, its allegations [were] too vague to plead any such

22  breach, let alone aiding and abetting such breach," and (3) "the cases on which GENFIT

23  relie[d] to establish CymaBay's liability based on a failure to report Dr. Hirschfield's

24  breach [were] distinguishable."  (See Sept. 9 Order at 4-17.)

25  

26     [6] In light of these findings, the Court does not address herein CymaBay's
alternative arguments that GENFIT has failed to allege facts to support a finding that, as

27  to the Third Cause of Action, CymaBay "intended to disrupt [GENFIT's] relationship with
[Dr.] Hirschfield" (see Mot. at 18:4-14), or that, as to the Fourth Cause of Action,

28  CymaBay owed GENFIT a "duty of care" (see Mot. at 18:15-19:8).

United States District Court
Northern District of California

In the SAC, GENFIT now alleges Dr. Hirschfield, after sending the July 17 Email to CymaBay, "continu[ed] to discuss the Protocol and [CSI] with CymaBay throughout August 2020" (see SAC ¶ 204.d) and "provide[d] CymaBay with advice, insight and direction regarding GENFIT and its ELATIVE trial" (see SAC ¶ 204.f). Assuming, arguendo, such allegations suffice to show "an ongoing breach of [a] fiduciary dut[y]" by Dr. Hirschfield (see SAC ¶ 204) and "substantial assistance and encouragement" thereof by CymaBay (see SAC ¶ 211), the Court finds the Fifth Cause of Action nevertheless fails, as GENFIT has not alleged facts to support a finding that Dr. Hirschfield owed a fiduciary duty to GENFIT.[7]

The "essential elements" of a "confidential relationship that gives rise to a fiduciary duty" are "(1) [t]he vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." See Richelle L. v. Roman Catholic Archbishop of S.F., 106 Cal. App. 4th 257, 272 (2003) (internal quotation and citation omitted). Although "the existence of a fiduciary duty is generally a question of fact which cannot be resolved at the motion to dismiss stage," where a plaintiff "ha[s] not pled facts that would give rise to a fiduciary relationship, . . . the Court need not accept [plaintiff's] conclusory allegation that such a relationship existed." See Cruz v. United States, 219 F. Supp. 2d 1027, 1039 (N.D. Cal. 2002).

GENFIT first contends Dr. Hirschfield owed GENFIT a fiduciary duty by virtue of the CDA and the Collaboration Agreement (see SAC ¶ 200), and, further, because GENFIT "placed its full trust and confidence in Dr. Hirschfield and relied on [him] to act in

---

[7] Although CymaBay, noting GENFIT's incorporation in France and Dr. Hirschfield's residence in Canada, asserts "[t]he fiduciary question raises complex conflict-of laws and choice-of-law issues" (see Mot. at 19 n.2), CymaBay has not "offered any evidence of any foreign law or how it would apply in this transaction," and, consequently, the Court "may conclude that the parties have acquiesced in the application of the law of the forum," i.e., California, see Interpool Ltd. v. Char Yigh Marine (Panama) S.A., 890 F.2d 1453, 1458 (9th Cir. 1989).

United States District Court
Northern District of California

good faith" (see SAC ¶ 201).  "[P]arties to a confidentiality agreement," however, "do not

stand in a fiduciary relationship as to each other simply by virtue of the agreement."  See

City Sols., Inc. v. Clear Channel Comms., Inc., 201 F. Supp. 2d 1048, 1049 (N.D. Cal.

2002) (noting "existence of a detailed confidentiality agreement suggests arm's-length

dealings between co-equals").

     "The mere fact that [GENFIT] reposed trust and confidence in [Dr. Hirschfield]

does not impose any corresponding fiduciary duty," see Worldvision Enters., Inc. v. Am.

Broad. Cos., Inc., 142 Cal. App. 3d 589, 595 (1983) (finding no fiduciary duty despite "on-

going relationship which required confidence between the parties"), and, as CymaBay

points out, nothing in the CDA (see Decl. of Jonathan P. Bach in Support of Def.'s Mot. to

Dismiss the SAC ("Bach Decl.") Ex. A) or the Collaboration Agreement (see id. Ex. B)

purports to create a fiduciary relationship.[8]  Indeed, the CDA refers to Dr. Hirschfield as

an "independent contractor" with "[n]o . . . authority to act on behalf of . . . or to bind

[GENFIT] in any manner" and disaffirms any "partnership or employment or principal-

agent relationship or joint venture" (see id. Ex. A § 14); the Collaboration Agreement,

likewise, disaffirms any "employment, agency, joint venture, or partnership relationship

between" Dr. Hirschfield and GENFIT (see id. Ex. B ¶ 3.1); see also Enea v. Jones, Case

No. 14-cv-01526-JD, 2014 WL 3956559, at *3 (N.D. Cal. Aug. 12, 2014) (finding no

fiduciary duty created by agreement that "specifically refer[red] to [party] as a

'contractor'"); City Sols., 201 F. Supp. 2d at 1049-50 (finding, "as a matter of law,"

fiduciary duty "clearly" not created by confidentiality agreement disaffirming "any agency,

partnership, or joint venture" between parties thereto).[9]

_____

     [8] The Court takes judicial notice of the CDA and Collaboration Agreement.  See
United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (holding courts "may
consider . . . documents incorporated by reference in the complaint . . . without converting
[a] motion to dismiss into a motion for summary judgment").

     [9] The cases on which GENFIT relies are distinguishable.  See, e.g., United States
v. Kosinski, 976 F.3d 135, 143-47 (2d Cir. 2020) (discussing "fiduciary-like duty" of "trust
and confidence" that can give rise to insider trading liability (emphasis added)); United
States v. Milovanovic, 678 F.3d 713, 724 (9th Cir. 2012) (holding "fiduciary duty
for . . . purposes of the Mail Fraud Statute is not limited to a 'fiduciary' relationship well-

1   GENFIT next contends a fiduciary relationship existed because "Dr. Hirschfield's

2   unique expertise, reputation as one of the world's top scientists," and "agreement to

3   fulfill . . . important roles for GENFIT" put him in a "superior position to exert unique

4   influence over GENFIT."  (See SAC ¶ 201.)  Although a fiduciary duty may arise where

5   "one party is vulnerable and dependent upon the other," see City of Hope Nat'l Med. Ctr.

6   v. Genentech, Inc., 43 Cal. 4th 375, 387-88 (2008), GENFIT has not alleged facts to

7   support a finding that its asserted vulnerability was "so substantial as to give rise to

8   equitable concerns underlying the protection afforded by the law governing fiduciary

9   duties," see id. at 389 (noting it "is not at all unusual for a party to enter into a contract for

10  the very purpose of obtaining the superior knowledge or expertise of the other party");

11  see also Richelle, 106 Cal. App. 4th at 273 (noting the "vulnerability that is the necessary

12  predicate of a confidential relation [that can potentially be characterized as

13  fiduciary] . . . usually arises from advanced age, youth, lack of education, weakness of

14  mind, grief, sickness, or some other incapacity").[10]

15  Accordingly, GENFIT's Fifth Cause of Action will be dismissed without further

16  leave to amend.[11]

**D.   Sixth Cause of Action (Violation of Unfair Competition Law)**

18  In the Sixth Cause of Action, GENFIT alleges CymaBay has violated California's

19  Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., specifically, its

---

known in the law"); Parallel Synthesis Techs., Inc. v. DeRisi, Case No. 5:13-cv-05968-PSG, 2014 WL 4748611, at *4 (N.D. Cal. Sept. 23, 2014) (finding ongoing duty of loyalty where former employee's "principal-agent relationship . . . did not change" upon becoming independent contractor).

[10] In light of these findings, the Court does not address herein CymaBay's alternative argument that GENFIT has failed to allege facts to support a finding that CymaBay had "actual knowledge" of a fiduciary breach.  (See Mot. at 20:13-14.)

[11] Although, in its September 9 Order, the Court did not reach the issue of whether GENFIT had alleged facts in its FAC sufficient to support a finding that Dr. Hirschfield owed a fiduciary duty to GENFIT (see Sept. 9 Order at 4 n.5), GENFIT was on notice that its allegations therein were deficient (see Mot. to Dismiss FAC at 19:19-21:2) and, as discussed above, its efforts to address those deficiencies are unavailing.

United States District Court
Northern District of California

1   "unlawful" prong, by committing the alleged violations set forth in the Third through Fifth

2   Causes of Action (see SAC ¶¶ 214-17; see also Opp. at 25:6-7 (noting "GENFIT's UCL

3   claims are premised on its prospective economic advantage and aiding and abetting

4   claims")).  Consequently, the Sixth Cause of Action is derivative of those other claims.

5   See Berryman v. Merit Prop. Mgmt., 152 Cal. App. 4th 1544, 1554 (2007) (holding

6   "[u]nder its 'unlawful' prong, the UCL borrows violations of other laws . . . and makes

7   those unlawful practices actionable under the UCL").

8       As discussed above, the Court has found GENFIT's Third through Fifth Causes of

9   Action are subject to dismissal.  Consequently, the Sixth Cause of Action is also subject

10  to dismissal to the extent it is based thereon.[12]

11      GENFIT argues that, nevertheless, "the SAC adequately identifies anti-competitive

12  behavior sufficient to sustain the 'unfair' prong of [its] UCL claim" (see Opp. at 25:11-12),

13  namely, because "GENFIT and CymaBay directly compete in the drug development

14  market to treat PCB" and "CymaBay took deliberate actions to compete unfairly with

15  GENFIT" (see Opp. at 25:18-20).  Under the UCL, "a plaintiff who claims to have suffered

16  injury from a direct competitor's 'unfair' act or practice" must plead "conduct that

17  threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of

18  those laws because its effects are comparable to or the same as a violation of the law, or

19  otherwise significantly threatens or harms competition."  See Cel-Tech Commc'ns, Inc. v.

20  L.A. Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999).  Here, as CymaBay points out,

21  GENFIT has neither pleaded the requisite "incipient violation of an antitrust law," see id.,

22  nor that CymaBay's alleged conduct "significantly threatens or harms competition" by

23

24          [12] CymaBay also contends the Third through Fifth Causes of Action, as well as the
    Sixth Cause of Action to the extent based thereon, are subject to dismissal for the
25  additional reason that such claims are preempted by CUTSA.  See K.C. Multimedia, Inc.
    v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 958 (2009) (holding
26  CUTSA "preempts common law claims that are based on the same nucleus of facts as
    the misappropriation of trade secrets claim for relief" (internal quotation and citation
27  omitted).)  In light of the above findings, the Court does not address herein that additional
    argument.
28

causing harm "not just . . . to [GENFIT] itself," but "to the market as a whole," <u>see</u> <u>Snapkeys, Ltd. v. Google LLC</u>, Case No. 19-CV-02658-LHK, 2020 WL 6381354, at *3 (N.D. Cal. Oct. 20, 2020) (noting "individualized harm . . . does not support a claim for violation of the UCL").

Accordingly, GENFIT's Sixth Cause of Action will be dismissed without further leave to amend.

### CONCLUSION

For the reasons stated above, CymaBay's motion to dismiss is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: January 21, 2022

MAXINE M. CHESNEY
United States District Judge

United States District Court
Northern District of California